Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| MARICARMEN BONILLA ALVERIO, *ET AL.*<br>Recurridos<br><br>v.<br><br>METRO HATO REY, INC., *ET AL.*<br>Peticionarios | KLCE202500644<br><br>cons con<br><br>KLCE202500648<br>KLCE202500650<br>KLCE202500660 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil Núm. SJ2022CV08969<br><br>Sobre: Impericia Médica |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 11 de marzo de 2026.

Mediante la presentación independiente de cuatro recursos de *certiorari,* que posteriormente fueron consolidados, comparecen la Dra. Kamir Garcés Mejías (Dra. Garcés Mejías), el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitalaria (SIMED), el Dr. Daniel E. Roques Arroyo (Dr. Roques Arroyo), Emergency Physician Providers, LLC (EPP), Metro Hato Rey, Inc., h/n/c Hospital Pavía Hato Rey y su aseguradora The Medical Protective Company (en conjunto, Peticionarios). Nos solicitan que revoquemos la *Resolución y Orden* que emitió el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 10 de abril de 2025. En dicho dictamen, el foro recurrido denegó las solicitudes de sentencia sumaria que presentaron los Peticionarios y ordenó la continuación de los procedimientos.

NÚMERO IDENTIFICADOR

RES2026_____

Mediante su dictamen, el foro recurrido resolvió que el *Public Readiness and Emergency Preparedness Act for Medican Countermeasures Against COVID-19* (PREP Act), 42 U.S.C.A. sec. 247d-6d *et seq.*, no aplica a la controversia presentada, pues se trata de un reclamo de negligencia en la atención y tratamiento que recibió el señor Diego Pérez López para su condición cerebral. Mientras, los Peticionarios sostienen que los hechos incontrovertidos los ubican como cubiertos por la inmunidad que ofrece dicha ley, y por ello procedía la desestimación de la causa.

Evaluados los asuntos ante nuestra consideración, adelantamos que hemos decidido *Denegar*.

## I. Resumen del tracto procesal y hechos esenciales

Los hechos que originan la causa de epígrafe tuvieron lugar el 14 de octubre de 2021, cuando la señora Maricarmen Bonilla Alverio (señora Bonilla Alverio) transportó de emergencia a su esposo Diego Pérez López (señor Pérez López) al Hospital Metro Pavía de Hato Rey (Metro Pavia), luego que este sufriera una caída en su hogar.[1] Del expediente en autos surge que el señor Pérez López presentaba sangrado por la nariz, vómitos con sangre y se encontraba desorientado, agitado y con dificultad para hablar.[2]

Después de examinar al señor Pérez López cerca de las 8:30 de la mañana, el Dr. Roques Arroyo ordenó varias pruebas. Entre estas, un CT Scan de la cabeza, radiografía de pecho, un CT Scan maxilofacial y la prueba de antígeno para detectar el virus del Covid 19. En específico, el señor Pérez López fue ubicado en el área de Cardiología y a las 8:51 de la mañana se le realizó la prueba de antígeno para detectar el virus del Covid 19.[3]

Debido a la condición médica del señor Pérez López se tramitó el traslado del paciente a Centro Médico, sujeto al resultado de la prueba de

---

[1] Apéndice del caso KLCE202500644, págs. 1-16.
[2] *Id.*, 1,601-1,627.
[3] *Id.*

Covid 19.[4] Cerca de las 11:54 de la mañana se obtuvo el resultado positivo de la prueba del Covid 19. Debido a tal resultado, el Centro Médico rechazó el traslado del señor Pérez López, siendo este aislado en una habitación en Metro Pavía. Sin embargo, convencida de que la prueba del Covid 19 obedeció a un falso positivo, la señora Bonilla Alverio solicitó que se le repitiera, a lo que el Dr. Roques Arroyo se rehusó en ese momento.[5]

Al día siguiente, el personal de Metro Pavia le repitió la prueba del Covid 19, que resultó negativa. Ese mismo día, el señor Pérez López sufrió un arresto cardio respiratorio que le causó la muerte.[6]

Es así como, el 12 de octubre de 2022, la señora Bonilla Alverio, junto a su hija menor y otras partes (Recurridos), presentó una *Demanda* por daños y perjuicios e impericia médica contra los Peticionarios, por causa de la muerte de su esposo.[7] Sostuvo que la muerte de su esposo se debió a las actuaciones y/u omisiones negligentes médicas y hospitalarias y a la falta de tratamiento adecuado para su condición cerebral.[8]

Ante lo cual, los doctores Garcés Mejías y Roques Arroyo, ambos en conjunto con SIMED, presentaron por separado sus correspondientes contestaciones a la *Demanda*.[9] Igualmente lo hizo Metro Pavía, su aseguradora The Medical Protective Company; Emergency Physician Providers LLC (EPP), su aseguradora Puerto Rico Medical Defense Insurance Company; y Fast Care Ambulance, LLC (Fast Care).[10] En resumen, las partes negaron la mayoría de las alegaciones en su contra.

En tanto, EPP presentó también una *Moción Sometiendo Demanda contra Coparte* contra Fast Care, en la que le imputó negligencia al no transportar a tiempo al señor Pérez López y abandonarlo en la sala de

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*, págs. 1-16
[8] *Id.*
[9] *Id.*, págs. 47-70, 71-95; 128-146.
[10] *Id.*, págs. 96-112; 113-127; 218-227.

emergencia del hospital.[11] Fast Care negó las alegaciones y reiteró que no cometió acción u omisión que produjera o contribuyera a los daños que reclamaron los demandantes.[12]

Tras varias incidencias procesales, el Dr. Roques Arroyo y SIMED presentaron una *Moción de Sentencia Sumaria*, en la que solicitaron la desestimación de la *Demanda* al amparo del PREP Act.[13] Luego de enumerar treinta hechos que, a su juicio, eran esenciales y no estaban en controversia, el Dr. Roques Arroyo adujo que el referido estatuto federal provee inmunidad total a los médicos de cualquier daño relacionado o que resulte de la administración o uso de las medidas para tratar el virus del COVID-19. A su entender, los daños que reclaman los Recurridos están relacionados con el uso y la administración de contramedidas cubiertas en el tratamiento contra el COVID-19. En particular, esgrimió que resulta de aplicación dicha inmunidad puesto que la alegación de los peritos de la parte demandante tiene que ver con el retraso del tratamiento que se ofreció, por haberse utilizado una prueba de COVID-19 equivocada, sin evidencia de esto. Añadió que el retraso que provocó el positivo a la prueba del COVID-19, impidió el traslado del paciente a tiempo a otra institución donde se le hubiese podido dar el tratamiento de neurocirugía.

Igualmente, la Dra. Garcés Mejía y SIMED y Metro Hato Rey y su aseguradora The Medical Protective Company presentaron sus respectivas solicitudes de sentencia sumaria, bajo los mismos fundamentos que utilizó el Dr. Roques Arroyo en su *Moción de Sentencia Sumaria*.[14] A su vez, EPP presentó una *Moción Adoptando Mociones de Sentencia Sumaria*.[15]

En atención a las mociones dispositivas presentadas, los Recurridos sometieron su oposición a cada una de estas. Luego de hacer referencia a los hechos propuestos como incontrovertidos en las referidas mociones

---

[11] *Id.*, págs. 215-217.
[12] *Id.*, págs. 228-230.
[13] *Id.*, págs. 231-260.
[14] *Id.*, págs. 261-487; 488-536.
[15] *Id.*, págs. 537-538.

dispositivas, admitiendo algunos y negando otros, incluyeron una extensa lista de *hechos adicionales en los cuales no existe controversia*. Además, enumeraron treinta y seis hechos que, a su juicio, permanecían en controversia y resultaban en causa para denegar las mociones pendientes. Entonces, arguyeron que sus reclamos no estaban relacionados a la falta de tratamiento adecuado para el virus del COVID-19, sino sobre la atención y tratamiento a un paciente con sangrado cerebral.[16] En este sentido, afirmaron que la utilización de la contramedida (la prueba de antígeno) no fue la causa de los danos sufridos, sino el abandono institucional de este en el cuarto de aislamiento, la falta del tratamiento adecuado para su condición cerebral mientras esperaba traslado.

Después de varias incidencias procesales, que incluyó la presentación de réplicas a las oposiciones y otros trámites, el foro recurrido emitió la *Resolución y Orden* recurrida.[17] En esta, enumeró veintitrés hechos relevantes que no estaban en controversia, para, luego de exponer el derecho referente a la Ley PREP, *supra*, e identificar que la controversia esencial giraba en torno a la alegada inmunidad concedida a los demandados por vías de dicha legislación, concluir que esta no resultaba de aplicación al caso. Con mayor especificidad, aunque el TPI juzgó que los Apelantes son *personas cubiertas*, según la acepción que de dicho concepto se da en la Ley PREP, concluyó que la causa de acción tiene que ver con la alegada falta de tratamiento adecuado para la condición cerebral del señor Pérez López mientras esperaba ser trasladado, no con la prueba de COVID-19 suministrada. Como controversia a ser dilucidada en juicio plenario el tribunal *a quo* identificó la de si los demandados se apartaron de la buena práctica de la medicina mientras el señor Pérez López esperaba se trasladado, asunto que, según el mismo foro señaló, no fue discutido por los Peticionarios en sus

---

[16] *Id.*, págs. 539-881; 882-1,222; 1,223-1,572.
[17] *Id.*, págs. 1,601-1,627.

respectivas mociones dispositivas. En consecuencia, declaró No Ha Lugar las mociones de sentencia sumaria presentadas y ordenó la continuación de los procedimientos.

Oportunamente, Metro Pavía y su aseguradora Medpro, el Dr. Roques Arroyo, la Dra. Garcés Mejías y la aseguradora SIMED presentaron sendas mociones de reconsideración, en las que reiteraron su posición.[18] Mientras, EPP adoptó las mociones de reconsideración sometidas.[19] Los Recurridos se opusieron.[20] Después de examinar las solicitudes y su oposición, el TPI se sostuvo en su decisión y declaró No Ha Lugar las mociones de reconsideración.[21]

Inconformes, los Peticionarios acudieron ante este foro intermedio mediante el recurso consolidado de epígrafe, en el que señalaron que el TPI cometió los siguientes errores:

### KLCE202500644

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR A LA SOLICITUD DE SENTENCIA SUMARIA FUNDAMENTADA EN LA PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT FOR MEDICAL COUNTERMEASURES AGAINST COVID-19 (LEY "PREP").

B. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE, AUN CUANDO LA LEY PREP APLICA AL CASO, TIENE SUPREMACÍA, TIENE UN ALCANCE AMPLIO Y LE CONFIERE INMUNIDAD A LOS MÉDICOS QUE UTILICEN CONTRAMEDIDAS POR DAÑOS RELACIONADOS CON ELLAS, NO PROCEDE DESESTIMAR EL CASO DE AUTOS POR ENTENDER QUE PUEDE HABER OTRAS CAUSAS DEL DAÑO RECLAMADO, LO QUE IMPLICA UNA INTERPRETACIÓN RESTRICTIVA DEL ESTATUTO.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL UTILIZAR JURISPRUDENCIA NI VINCULANTE Y DISTINGUIBLE A LOS HECHOS DEL CASO EN CONTRAVENCIÓN CON SUS PROPIAS DETERMINACIONES DE HECHOS INCONTROVERTIDOS EN ESTE CASO, APLICANDO ASÍ UN

D. FUNDAMENTO LEGAL INCORRECTO.

### KLCE202500648:

A. ERRÓ EL TPI EN CLARO ABUSO DE DISCRECIÓN AL DETERMINAR QUE LOS HECHOS EN EL PRESENTE CASO NO SE ENCUENTRAN COBIJADOS BAJO EL PREP-ACT.

---

[18] *Id.*, págs. 1,628-1,637; 1,638-1,643; 1,646-1,659.
[19] *Id.*, págs. 1,644-1,645.
[20] *Id.*, págs.1,660-1,663.
[21] *Id.*, pág. 1,664.

B. ERRÓ EL TPI EN CLARO ABUSO DE DISCRECIÓN AL DETERMINAR QUE DICHA LEY FEDERAL (PREP ACT) NO APLICA EN EL PRESENTE CASO.

C. ERRÓ EL TPI EN CLARO ABUSO DE DISCRECIÓN AL NO DESESTIMAR LA DEMANDA EN EL PRESENTE CASO, A TENOR CON EL PREP ACT.

**KLCE202500650:**

A. ERRÓ EL TPI AL DENEGAR LAS MOCIONES DE SENTENCIA SUMARIA RADICADAS POR LOS DEMANDADOS QUE FUERON ADOPTADAS POR REFERENCIA POR LA PETICIONARIA Y CONCLUIR QUE HAY QUE DEMOSTRAR QUE LA CONTRAMEDIDA ADMINISTRADA EN ESTE CASO FUE LA CAUSA DIRECTA DE LOS DAÑOS DEL PACIENTE Y QUE LA MUERTE O LESIÓN DEL CAUSANTE DE LOS DEMANDANTES NO OBEDECIÓ A UNA CONTRAMEDIDA CUBIERTA.

B. ERRÓ EL TPI AL DENEGAR LAS MOCIONES DE SENTENCIA SUMARIA RADICADAS POR LOS DEMANDADOS POR EL FUNDAMENTO DE QUE CONCEDER LA INMUNIDAD RECLAMADA BAJO LA LEY PREP DEJARÍA A LOS DEMANDANTES DESPROVISTOS DE UN REMEDIO, DE DETERMINARSE RESPONSABILIDAD DE PARTE DE LOS DEMANDADOS.

**KLCE20250060:**

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA SOLICITANDO LA DESESTIMACIÓN DE LA DEMANDA AL AMPARO DE LAS DISPOSICIONES DEL PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT ("PREP ACT"), 42 U.S.C. § 247D-6D(A)(1).

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL HACER UNA INTERPRETACIÓN RESTRICTIVA DEL PREP ACT Y DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA, A PESAR DE DETERMINAR QUE EL PREP ACT OCUPA EL CAMPO, TIENE UN ALCANCE AMPLIO, CUBRE AL HOSPITAL PAVÍA HATO REY Y A LOS MÉDICOS POR LOS DAÑOS RELACIONADOS CON EL USO Y/O ADMINISTRACIÓN DE CONTRAMEDIDAS, Y ESTABA VIGENTE A LA FECHA DE LOS HECHOS.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA Y DETERMINAR QUE, A PESAR DE LOS HECHOS ESTAR COBIJADOS POR LAS DISPOSICIONES Y LA INMUNIDAD CONFERIDA POR EL PREP ACT POR ESTAR RELACIONADOS CON EL USO Y/O ADMINISTRACIÓN DE CONTRAMEDIDAS, NO PROCEDE LA DESESTIMACIÓN DE LA DEMANDA POR ENTENDER QUE PUDIERA HABER OTRAS CAUSAS PARA LOS DAÑOS RECLAMADOS

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es,

en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra, pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra, págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

En lo que aquí concierne, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de la denegatoria de una moción de carácter dispositivo.

De conformidad, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra.* De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40[22] de nuestro

---

[22]  A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
   B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
   C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
   D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
   E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

Reglamento, 4 LPRA Ap. XXII-B, se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró, supra.*

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730.

Finalmente, al denegar la expedición del recurso solicitado, asumimos las expresiones de nuestro más alto tribunal que advierte que una resolución denegatoria de *certiorari* **no implica posición alguna del Tribunal respecto a los méritos de la causa sobre la cual trata el recurso**; esto es, una resolución declarando No Ha Lugar un recurso de *certiorari* no resuelve implícitamente cuestión alguna contra la peticionaria a los efectos que pueda señalarse como cosa juzgada. La resolución denegatoria simplemente es índice de la facultad discrecional de este Tribunal para negarse a revisar en determinado momento. *Sociedad Legal de Gananciales v. Pauneto Rivera*, 130 DPR 749, 755-756 (1992).

b.

i.

La sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa,

---

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

rápida y económica de los litigios civiles". *Ramos Pérez v. Univisión*, 178 DPR 200, 220 (2010). Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013).

Asimismo, la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, especifica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En suma, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. *Id.* Ahora bien, "es esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024); *Zambrana García v. ELA*, 204 DPR 328, 341-342 (2020); *Jusino et al. v. Walgreens*, 155 DPR 560, 577 (2001).

En contraste, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3 (b) de las de Procedimiento Civil, *supra*. De aquí que la parte que se opone a que se dicte sentencia sumaria no puede descansar exclusivamente en sus alegaciones, ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, debe controvertir la prueba presentada por la parte solicitante, a fin de

demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006).

No procede dictar sentencia sumaria cuando existen elementos subjetivos de intención, propósitos mentales o negligencia; cuando la credibilidad de las partes sea esencial; o cuando el caso trata controversias complejas o involucra asuntos de interés público. *Jusino et als. v. Walgreens,* supra, pág. 579*; González Aristud v. Hosp. Pavía*, supra.

ii.

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2)

solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

c.

El PREP Act fue aprobado por el Congreso Federal para promover una serie de *contramedidas* médicas en tiempos de crisis, limitando la responsabilidad legal relacionada a las tales, mientras perdure la amenaza a la salud pública. En lo esencial, el estatuto ofrece una protección de responsabilidad frente a demandas y reclamos cuando quien invoca la inmunidad es una *persona cubierta*, que utilizó una *contramedida* en el curso de una actividad recomendada durante la vigencia de la amenaza de salud pública, y existe una relación causal entre el reclamo y la contramedida ejercida. 42 U.S.C.A. § 247d-6d.

Son personas calificadas bajo el PREP Act los profesionales de la salud autorizados o aquellas personas con facultad para recetar, administrar o dispensar las contramedidas cubiertas. 42 U.S.C.A. § 247d-6d(i)(8). Para efectos de esta legislación, persona incluye tanto individuos como corporaciones. 42 U.S.C.A. § 247d-6d(i)(5).

De otra parte, el PREP Act define una contramedida cubierta como un producto pandémico o epidémico cualificado, una contramedida de seguridad, una droga,[13] producto biológico o dispositivo autorizado para

uso de la emergencia o aquel dispositivo de protección respiratoria que se considere de uso prioritario durante la emergencia de salud pública. 42 U.S.C.A. § 247d-6d(i)(1). Además, un producto pandémico o epidémico calificado se refiere, entre otros, a aquella droga, producto biológico o dispositivo manufacturado, utilizado, diseñado, desarrollado para diagnosticar, mitigar, prevenir, tratar o curar una pandemia o epidemia, o para limitar sus efectos dañinos. 42 U.S.C.A. § 247d-6d(i)(7).

La única excepción a la inmunidad bajo el PREP Act, *supra,* es la muerte o las lesiones físicas graves causadas por la mala conducta intencional, término cuya definición expusimos en el tracto procesal. 42 U.S.C.A. § 247d-6d (c)(1)(A) y (B). Durante la vigencia de una declaración de emergencia de salud pública, ningún Estado puede promover o hacer cumplir una disposición que entre en conflicto con algún requisito relacionado a la contramedida cubierta. 42 U.S.C.A. § 247d-6d(b)(8).

**III.  Aplicación del Derecho a los hechos**

a.

Según ya hemos indicado, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, nos habilita para revisar resoluciones u órdenes interlocutorias dictadas por el TPI cuando se recurra, en lo pertinente, de la denegatoria de una moción de carácter dispositivo. Precisamente, estamos ante la denegatoria de varias mociones de sentencia sumarias, que, al ser *mociones de carácter dispositivo* nos ubican en posición de ejercitar nuestra discreción para expedir el recurso solicitado, de así decidir ejercerla.

Claro, a pesar de que estemos habilitados para expedir el recurso de *certiorari,* ello no necesariamente supone que obremos de tal forma, en tanto que la particularidad esencial de dicho recurso reside en la discrecionalidad que se nos reconoce al decidir sobre su expedición.

b.

De ordinario, cuando revisamos las denegatorias de peticiones de sentencia sumaria iniciamos por examinar si las partes cumplieron con las formalidades que dimanan de la Regla 36 de Procedimiento Civil, supra, para entonces detenernos a verificar si la prueba documental incluida en sus escritos sostiene los hechos promovidos como incontrovertidos o los controvierten. Sin embargo, en el caso ante nuestra consideración, por una parte, resulta evidente que las partes cumplieron con las formalidades que la Regla 36.3(a) y (b) de Procedimiento Civil, 32 LPRA Ap. V, impone a las partes, y, por la otra, no se alzaron señalamientos de error respecto a las determinaciones de hechos alcanzadas por el TPI, limitándose a discutir un asunto de derecho. Reconocemos que, aunque la revisión de las denegatorias de mociones de sentencia sumaria por este foro intermedio acontece *de novo*, lo cierto es que como tribunal apelativo solo estamos llamados a considerar los señalamientos de error alzados por las partes y su discusión. *Ergo*, habiéndose limitado las partes en sus escritos a señalar y elaborar sobre la afirmación de que les resulta aplicable el Prep Act, y la inmunidad que ello comporta, tal será el asunto que atenderemos al dirimir sobre la expedición del *certiorari*.

Basta la sola lectura de los señalamientos de error incluidos por los Peticionarios en sus respectivos escritos para sintetizar los argumentos acerca de por qué entienden que resultan cobijados por la inmunidad del citado estatuto federal. En concreto, afirman que, según las propias determinaciones de hechos del TPI, se cumplen todos los requisitos de la legislación federal que los inmuniza de reclamaciones como las aquí iniciadas: 1) son una *persona cubierta*; 2) utilizaron una contramedida cubierta (la prueba para detectar el COVID-19 suministrada); 3) la reclamación del Recurrido tiene una relación causal con la administración

o uso de la contramedida, (el traslado del señor Pérez López a Centro Médico para recibir tratamiento especializado no se llevó a cabo, como resultado de que diera positivo a la referida prueba, y su aislamiento fue una medida tomada a partir del positivo en la misma prueba); 4) la contramedida se utiliza o administra en el curso de una actividad recomendada; 5) la contramedida se utiliza durante el periodo de vigencia de una declaración para combatir una amenaza de salud pública así declarada.

A tenor, la médula del planteamiento de los Peticionarios cabe reducirse a la aseveración de que el retraso del tratamiento que necesitaba el señor Pérez López fue debido al resultado de la prueba del COVID-19 (una contramedida), según necesariamente tuvo que hacerse a su llegada a la sala de emergencia del hospital, que, por su resultado positivo, provocó que fuera colocado en un cuarto de aislamiento, sin poder relocalizarlo al Centro Médico, acción que también encuadra en la acepción de *contramedida* cubierta por la inmunidad reconocida en el Prep Act.

Sin embargo, contrario a la reiterada aseveración de los Peticionarios: 1) no nos resulta aparente que el positivo inicial a la prueba del COVID-19 (sin duda una contramedida) justifique toda posible acción u omisión negligente de las *personas cubiertas* hacia el paciente mientras se mantuvo bajo sus cuidados; 2) íntimamente relacionado a lo anterior, con las determinaciones de hechos hasta ahora alcanzadas tampoco nos resulta clara la relación causal exigida en el estatuto federal entre la administración de la referida prueba, y la negligencia que se le atribuye a los Peticionarios una vez recibido el positivo. Por tanto, juzgamos que estaremos en mejor posición para aquilatar el asunto, una vez desfilada la prueba, y por ello hemos decidido denegar.

Al así determinar, reiteramos, sepan las partes que la denegatoria del *certiorari* **no implica posición alguna del Tribunal respecto a los méritos de la causa sobre la cual trata el recurso**; esto es, no estamos resolviendo la interrogante sobre si aplica o no la inmunidad contenida en el Prep Act. La denegatoria simplemente es índice de la facultad discrecional de este Tribunal para negarse a revisar en determinado momento. *Sociedad Legal de Gananciales v. Pauneto Rivera,* supra. Es decir, las determinaciones de hechos enumeradas en la *Resolución* recurrida nos resultan insuficientes en este momento para dar una respuesta final a tal asunto, que bien puede informarse de manera más cabal con el desfile de la prueba.

En definitiva, visto que la sentencia sumaria se recomienda en aquellos casos en que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver las controversias ante sí, no juzgamos encontrarnos en tal posición, y por ello hemos decidido denegar la expedición de los recursos presentados. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

## IV. Parte dispositiva

Según ya ha sido repetido, hemos decidido *Denegar* la expedición de los recursos de *certiorari* presentados, dando oportunidad a que el proceso siga su curso ante el TPI.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. La Jueza Santiago Calderón hace constar lo siguiente: Disiento del dictamen de la mayoría de este panel. Soy de la opinión que, la determinación del TPI es correcta en derecho en cuanto a que la inmunidad concedida por "Public Readiness and Emergency Preparedness ACT" es inaplicable al caso de autos.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones